```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
                                         :
GREGORY C.,                              :
                                         :
     plaintiff,                          :
                                         :
v.                                       :   CASE NO. 3:20cv01232 (RAR)
                                         :
KILOLO KIJAKAZI,                         :
COMMISSIONER OF SOCIAL                   :
SECURITY,                                :
                                         :
     defendant.                          :
```

## RULING ON PENDING MOTIONS

Gregory C. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g). The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated June 25, 2019. Plaintiff timely appealed to this Court. Currently pending are plaintiff's motion for an order reversing or remanding his case for a calculation of benefits (Dkt. #20-1) and defendant's motion to affirm the decision of the Commissioner. (Dkt. #26-1.)

For the reasons that follow, the plaintiff's motion to reverse, or in the alternative, remand, is DENIED.

## BACKGROUND

On November 30, 2016, plaintiff filed for Title II disability insurance benefits. (R. 13.) Plaintiff claimed

1

conditions of: chronic asthma, hypertension, chronic gout, tendonitis, back pain, sleep apnea, and anxiety. (R. 17.) Plaintiff's application was initially denied on July 14, 2017 (R. 66) and again upon reconsideration on June 21, 2018 (R. 67).

As part of his claim for disability benefits, plaintiff had two consultive psychiatric exams with Dr. Liese Franklin-Zitzkat. Plaintiff had his first visit with Dr. Franklin-Zitzkat on July 13, 2017. Dr. Franklin-Zitzkat's diagnostic impressions were panic disorder, unspecified trauma- and stressor-related disorder, and persistent depressive disorder with a moderate persistent major depressive episode. (R. 548.) She also opined that plaintiff:

> would likely have moderate difficulty attending to instructions. He seems capable of understanding instructions. He would have mild difficulty remembering instructions. He would likely have marked difficulty sustaining concentration on tasks. The aforementioned problems would interfere accordingly with his ability to carry out instructions in a work setting. Independent of the aforementioned issues, he would likely have moderate difficulty withstanding the stresses and pressures of a routine work day from a strictly psychological standpoint. He should be able maintain attendance provided he is within range of a hospital. He seems capable of responding appropriately to supervisors, coworkers, and the general public. He should be able to adapt to changes insofar as the aforementioned problems do not interfere. He seems capable of making work-related decisions.

(Id.) Dr. Franklin-Zitzkat also opined that plaintiff is "capable of managing his own funds." (R. 549.) Plaintiff

2

described his daily activities as writing a book and going over recipes. (R. 547.)

On July 14, 2017, Dr. Christopher Leveille conducted a mental residual functional capacity assessment as part of plaintiff's initial disability determination. Dr. Leveille opined that the plaintiff was "moderately limited" in his attention and concentration for extended periods, but that plaintiff "is able to remember and carry out routine work tasks with adequate attn., conc., pace and persistence for a normal work week." (R. 102.) Dr. Leveille also noted that Dr. Franklin-Zitzkat's opinion of plaintiff's capabilities was more limited than his opinion because Dr. Franklin-Zitzkat's "opinion relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion." (R. 99.)

On June 15, 2018, plaintiff had his second consultive examination with Dr. Franklin-Zitzkat. In her report for the second visit, Dr. Franklin-Zitzkat noted that the report contained information originally obtained during plaintiff's first visit. (R. 766.) Dr. Franklin-Zitzkat listed her diagnostic impressions as panic disorder, unspecified trauma- and stressor-related disorder, and persistent depressive disorder in partial remission. (R. 765.) Dr. Franklin-Zitzkat provided a medical source statement as follows:

3

> [Plaintiff] seems capable of attending to and understanding instructions. He could have as much as marked difficulty remembering instructions. He would likely have marked difficulty sustaining concentration on tasks. The aforementioned problems would interfere accordingly with his ability to carry out instructions in a work setting. Independent of the aforementioned issues, he would likely have mild to moderate difficulty withstanding the stresses and pressures of a routine work day from a psychological standpoint. From a psychological standpoint, he should be able to maintain attendance provided he is within range of a hospital. He seems capable of responding appropriately to supervisors, coworkers, and the general public. He should be able to adapt to changes insofar as the aforementioned problems do not interfere. He seems capable of making work-related decisions.

(Id.) Dr. Franklin-Zitzkat still found plaintiff "capable of managing his own funds." (R. 766.) She noted that between the first and second exams, plaintiff stopped writing his book and going over recipes "because of his physical problems." (R. 768.)

On June 20, 2018, Dr. Robert Decarli conducted a mental residual functional capacity examination as part of plaintiff's request for reconsideration. Dr. Decarli included the same findings as Dr. Leveille, noting that plaintiff "is able to remember and carry out routine work tasks with adequate attn., conc., pace and persistence for a normal work week." (R. 83.) Dr. Decarli similarly noted that his assessment of plaintiff was less restrictive than Dr. Franklin-Zitzkat's assessment because Dr. Franklin-Zitzkat's

4

assessment was predominantly based on plaintiff's subjective report and no medical records. (R. 80.)

As part of his disability reconsideration, plaintiff requested a hearing on July 26, 2018, which was held on April 18, 2019, before Administrative Law Judge ("ALJ") Ronald J. Thomas. The ALJ issued a decision on June 25, 2019, finding that plaintiff was not disabled within the meaning of the Social Security Act. (R. 14-32.)

Applying the five-step framework, the ALJ found at step one that plaintiff had not engaged in any substantial gainful activity since November 30, 2016. (R. 15.) At step two, the ALJ found that plaintiff had severe impairments of: gout; acute coronary syndrome; asthma; obesity; lower back pain; hypertension; anxiety and obsessive-compulsive disorders; and depressive, bipolar and related disorders. (Id.)

At step three, the ALJ relied upon both of Dr. Franklin-Zitzkat's opinions to determine that plaintiff did not have any mental impairments meeting the listing for depressive, bipolar and related disorders (12.04) or anxiety and obsessive-compulsive disorders (12.06). (R. 20.) The ALJ found that plaintiff has a mild limitation in understanding, remembering, or applying information, a moderate limitation in interacting with others, and a moderate limitation in concentrating, persisting, or maintaining pace. (R. 16.) For each of these

findings, the ALJ considered the consultative examinations of Dr. Franklin-Zitzkat. (Id.) In determining that plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace, the ALJ specifically noted, "This is supported by the mental status examinations of Dr. [Franklin-]Zitzkat, showing unimpaired to moderately impaired attention and markedly impaired concentration." (Id.)

Based on these findings, at step four, the ALJ determined plaintiff had the RFC to perform light work, and that "he is capable of simple, routine, repetitious work that does not require teamwork or working closely with the public, with only occasional interaction with the public, coworkers, and supervisors."[1] (R. 17.) The ALJ afforded Dr. Franklin-Zitzkat's "opinions . . . based on consultative examinations of the [plaintiff] on July 13, 2017" great weight because they were supported by mental status examinations and plaintiff's own descriptions. (R. 21.) The ALJ also afforded the psychological consultants at both the initial and reconsideration levels great weight, "as they are consistent with the findings of Dr.

---

[1] The ALJ also added the following limitations: "1) no more than occasional bending, balancing, twisting, squatting, crawling, kneeling, and climbing, but no climbing of ropes, scaffolds or ladders; 2) he needs to avoids [sic] hazards such as vibrations, dangerous machinery and heights, but driving is allowed; 3) must be in an environment free from concentrated, poor ventilation, dust, fumes, gases, odors, humidity, wetness, and temperature extremes; 4) no left or right foot controls." (R. 16.) Because the issue in this case is narrowly focused on the ALJ's RFC determination related to plaintiff's mental impairments, the Court need not analyze these physical limitations in this decision.

6

[Franklin-]Zitzkat in her consultative examinations." (R. 20-21.)

At step five, the ALJ determined that plaintiff has no past relevant work history. (R. 21.) Based on the testimony of Michael Dorval, vocational expert, the ALJ found that there were jobs that plaintiff could perform in significant numbers in the economy, including bakery worker, garment sorter, and assembler. (R. 22; 60-61.) The ALJ then concluded that plaintiff was not disabled within the meaning of the Social Security Act. (Id.)

Plaintiff then requested a review by the Review Appeals Council, which affirmed his denial on June 19, 2020. Plaintiff then appealed to this Court.

## STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).[2] "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

7

of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner's conclusion is based upon the correct legal principles, and whether the decision is supported by substantial evidence.  Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this Court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit Court of Appeals has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to an individual who has a disability.  42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any

8

medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1). To determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[3]

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[4]

## DISCUSSION

Plaintiff argues that the RFC determination that he can engage in "simple, routine, and repetitive work that does not

---

[3] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits the claimant's mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider the claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the severe impairment, the claimant has the residual functional capacity to perform the past work; and (5) if the claimant is unable to perform the past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

[4] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

9

require teamwork or working closely with the public, with only occasional interaction with the public, coworkers, and supervisors" is not supported by substantial evidence because it is inconsistent with the ALJ's decision to afford "great weight" to Dr. Franklin-Zitzkat's opinions. (Dkt. #20-1.) The Commissioner notes that even though Dr. Franklin-Zitzkat assessed plaintiff with marked limitations in his ability to concentrate and, in one opinion, stated that "[h]e could have as much as marked difficulty remembering instructions," (R. 765), Dr. Franklin-Zitzkat opined that plaintiff would still be able to work. (Dkt. #26-1.) Therefore, the Commissioner argues that when the ALJ viewed Dr. Franklin-Zitzkat's opinions *in toto*, it was clear that plaintiff could still work with some restrictions. (Dkt. #26-1.)

Neither party argues that the ALJ improperly credited Dr. Franklin-Zitzkat's opinions by giving them great weight. As such, the main issue is whether a limitation for "simple, routine, and repetitious work" is in harmony with Dr. Franklin-Zitzkat's assessments.

The Social Security Administration regulations define "moderate" limitations as: "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, §12.00(F)(2)(c). "Marked" limitations are defined as: "functioning in this area

independently, appropriately, effectively, and on a sustained basis is seriously limited." Id. at § 12.00(F)(2)(d). Concentration, persistence, or pace are "the abilities to focus attention on work activities and stay on task at a sustained rate." Id. at § 12.00(E)(3).

Plaintiff's claim, at its core, is that Dr. Franklin-Zitzkat's opinion that plaintiff has marked limitations in his ability to concentrate tips the scale and renders him disabled. Courts in the Second Circuit "have repeatedly held that '[m]arked limitations in mental functioning . . . do not mandate a finding of disability, but can be addressed with additional limitations to a plaintiff's RFC, such as limiting plaintiff to simple, routine and repetitive tasks in a work environment free of fast-paced production requirements." Kya M. v. Comm'r of Soc. Sec., 506 F. Supp. 3d 159, 166 (W.D.N.Y. 2020). "Court[s] ha[ve] found that a claimant with a marked limitation in performing a work-related function could perform that function occasionally." Perry v. Commissioner of Social Security, 15-CV-758 (GTS), 2017 WL 5508775, at *7 (N.D.N.Y. Jan. 30, 2017). Specifically, "an RFC limiting a claimant to simple, routine tasks addresses limitations in concentration, persistence, and pace." Id.

The Court has found at least one case that indicates that a plaintiff with a sedentary RFC and marked concentration limitations is unable to work at all. See Worthy v. Berryhill,

11

No. 15-cv-1762 (SRU), 2017 WL 1138128, at *8 (D. Conn. Mar. 27, 2017). Worthy cited two other cases as examples for when "sedentary plaintiffs with 'marked' limitations on social functioning, concentration, and persistence have been found wholly unable to do even simple, low-skilled work," Mateo v. Colvin, No. 14-cv-6109 (MKB), 2016 WL 1255724, at *3 (E.D.N.Y. Mar. 28, 2016) and Ramos v. Comm'r of Soc. Sec., No. 13-cv-6561 (AJN), 2015 WL 708546, at *9 (S.D.N.Y. Feb. 4, 2015). In both cases, the relevant language cited in Worthy was not actually from the court's holding, but from VE testimony. The Court has been unable to find any other cases that support plaintiff's underlying contention that a marked concentration limitation would require such a severe RFC limitation that it would render plaintiff disabled.

    Here, the ALJ explicitly stated "mental restrictions have been placed into the residual functional capacity" stemming from Dr. Franklin-Zitzkat's diagnoses of depressive disorder, panic disorder, and unspecified trauma disorder. (R. 20.) This is in coherence with the ALJ's decision to afford great weight to Dr. Franklin-Zitzkat's opinions because the evidence of plaintiff's mental impairments is largely comprised of Dr. Franklin-Zitzkat's opinion.[5] The only evidence of plaintiff's inability to

---

[5] The record is replete with references to plaintiff experiencing anxiety in response to medical events, either being in the hospital, having high blood pressure, or facing an upcoming procedure. But there is no

concentrate was his performance on serial threes. At both consultative exams, plaintiff was able to spell world backwards. (R. 552; 769.) The first time plaintiff attempted serial threes, he responded, "100, 97, 94, 91, 98, 95, I might be off already, 92," and then was unable to continue. (R. 552.) At the second consultative exam, he was able to "perform serial threes (slowly) from 100 to 82 but then stopped and stated, 'I don't think I can do that. It's kinda hard. It's giving me a headache.'" (R. 769.)

Dr. Franklin-Zitzkat also noted plaintiff "would likely have moderate difficulty attending to instructions," but "seems capable of understanding instructions" in her first consultative examination. (R. 552.) In her second consultative examination, Dr. Franklin-Zitzkat noted that plaintiff "seems capable of attending to and understanding instructions." (R. 769.) Though there are inconsistencies between the two opinions, ALJs are not "required 'explicitly to reconcile every conflicting shred of medical testimony.'" Perry, 2017 WL 5508775, at *8 (quoting Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981)). It is enough that the ALJ considered both opinions in crafting the RFC. Id.; (R. 20-21.)

---

official diagnosis of plaintiff's anxiety outside of Dr. Franklin-Zitzkat's diagnoses.

While plaintiff correctly argues that ALJs cannot cherry-pick portions of the medical source statement to reach a desired outcome, see Dioguardi v. Comm'r of Soc. Sec., 445 F. Supp. 2d 298 (E.D.N.Y. 2006), Dowling v. Comm'r of Soc. Sec., No. 14-cv-0786 (GTS/ESH), 2015 WL 5512408, at *11 (N.D.N.Y. September 15, 2015), the ALJ in this case did not select only the portions of the medical exams that he preferred. Because the ALJ considered Dr. Franklin-Zitzkat's opinions, he assigned a mental RFC limitation. (R. 24.) There is no other evidence anywhere in the record that plaintiff suffers from an inability to concentrate; even the opinions of Dr. Decarli and Dr. Leveille were based on Dr. Franklin-Zitzkat's reports. The fact that the ALJ included a mental RFC indicates that he considered Dr. Franklin-Zitzkat's opinions. The ALJ's step three determination that plaintiff was moderately limited in concentrating, persisting, or maintaining pace also indicates that the ALJ thoroughly considered all of Dr. Franklin-Zitzkat's opinions, as the ALJ stated the basis of this determination was Dr. Franklin-Zitzkat's opinion that plaintiff had unimpaired to moderately impaired attention and markedly impaired concentration. (R. 16.)

Even though the ALJ heavily weighed Dr. Franklin-Zitzkat's opinions and included a mental RFC because of Dr. Franklin-Zitzkat's opinions, he was still entitled to base his RFC on the record as a whole. "In formulating a plaintiff's RFC, an ALJ

does not have to strictly adhere to the entirety of one medical source's opinion." Perry v. Commissioner of Social Security, No. 15-CV-758 (GTS), 2017 WL 5508775, at *8 (N.D.N.Y. Jan. 30, 2017). An ALJ is entitled to base the RFC assessment on the record as a whole. 20 C.F.R. § 416.945(a)(3) (noting that RFC assessments are "based on all of the relevant medical and other evidence").

In viewing the entire record, the Court finds that there is substantial evidence in the record that supports the ALJ's RFC determination. The ALJ explicitly noted that even in light of Dr. Franklin-Zitzkat's diagnoses, plaintiff "has not sought out specialized mental health treatment." (R. 20.) The ALJ also noted that "[t]his file presents a truly minimal overall picture of support for the allegations." (R. 19.)

The two consultative medical source examinations done by Dr. Decarli and Dr. Leveille, which were also given great weight, support the restrictions that the ALJ imposed on plaintiff. Both doctors found that plaintiff was not significantly limited in his ability to: carry out very short and simple instructions; carry out detailed instructions; perform activities within a schedule; maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being

15

distracted by them; make simple work-related decisions; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others. (R. 82-83, 102-03.) Both doctors noted that plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods, complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and travel in unfamiliar places or use public transportation. (Id.)

Besides these medical opinions, there is no medical indication anywhere in the record that plaintiff has limitations in his ability to recall information or concentrate that would support a more limited RFC determination than the one assigned. Nor did plaintiff testify to an inability to concentrate. Plaintiff's daily activities of writing a book and going over recipes undercut his argument that he has an inability to concentrate.[6]

The Court finds that there is substantial evidence in the record to support the ALJ's RFC determination, even considering Dr. Franklin-Zitzkat's opinion that plaintiff has marked

---

[6] Though these activities ceased at the 2018 consultative exam with Dr. Franklin-Zitzkat, plaintiff "stopped engaging in those activities because of his physical problems," and not his mental problems. (R. 768.)

limitations in his ability to concentrate and may have as much as marked limitations in his recall. The evidence in the record supports the mental limitation included in the RFC but does not support a more severe limitation.

The RFC determination limiting plaintiff to simple, routine, repetitious tasks takes plaintiff's limitation into account and adequately addresses it. The determination is not inconsistent with Dr. Franklin-Zitzkat's opinion, because the ALJ considered Dr. Franklin-Zitzkat's assessment of a concentration limitation but based his RFC upon the record as a whole. Accordingly, there was no error in the ALJ's RFC determination.

## CONCLUSION

Based on the foregoing reasons, plaintiff's motion for an order to reverse or remand the Commissioner's decision (Dkt. #20-1) is DENIED and the Commissioner's motion to affirm that decision (Dkt. #26-1) is GRANTED.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3).

SO ORDERED this 14th day of March, 2022, at Hartford, Connecticut.

                                        /s/
                              Robert A. Richardson
                              United States Magistrate Judge